UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RAFAEL ELLWANGER DASILVA** | **CIVIL ACTION** |
| **VERSUS** | **No. 13-13** |
| **U.S. CITIZENSHIP AND IMMIGRATION SERVICES** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion[1] by plaintiff, Rafael Ellwanger DaSilva, for attorney's fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E), to which defendant, the United States Citizenship and Immigration Services ("USCIS"), has filed an opposition.[2] For the following reasons, the motion is **GRANTED IN PART, DENIED IN PART**, and **DISMISSED WITHOUT PREJUDICE** in all other respects.

## BACKGROUND

The Court assumes familiarity with the factual background of this case[3] and only briefly reviews a timeline of relevant dates.

On November 30, 2012, plaintiff submitted a request to the USCIS National Records Center, essentially requesting that it furnish his alien file ("A-File") and copies of emails concerning plaintiff sent to and/or received from certain USCIS employees.[4] On December 13, 2012, USCIS indicated to plaintiff that his request had been assigned a case number and placed in the "fast track"

---

[1] R. Doc. No. 70. Plaintiff seeks $46,076.44 in attorney's fees and costs. R. Doc. No. 70-2, at 20.
[2] R. Doc. No. 72.
[3] *E.g.*, R. Doc. No. 62.
[4] R. Doc. No. 62, at 1-2.

for a response, although it would still be responded to on a "first-in, first-out basis."⁵ On January 4, 2013, plaintiff filed a complaint against USCIS and several of its employees pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.⁶ On February 25, 2013, plaintiff received a production of documents from USCIS totaling approximately 1,300 pages, which appeared to comprise plaintiff's A-file, but which did not include the requested emails.⁷

On May 1, 2013, plaintiff filed a motion for summary judgment, highlighting the fact that no responsive email correspondence was included in USCIS's February 25 disclosure.⁸ On May 7, 2013, USCIS notified the Court and plaintiff that USCIS had located additional responsive documents,⁹ and USCIS later explained that it had "inadvertently overlooked the portions" of plaintiff's request that referenced electronic correspondence.¹⁰ After processing the records, USCIS mailed an additional approximately 1,100 pages of documents to plaintiff on May 20, 2013.¹¹

Although plaintiff challenged the redactions in both sets of documents, the Court rejected his challenges, and eventually granted summary judgment in favor of defendant and against plaintiff.¹²

## LAW AND ANALYSIS

Plaintiff seeks attorney's fees pursuant to 5 U.S.C.A. § 552(a)(4)(E), which provides:

---

⁵R. Doc. No. 50-1, at 2; R. Doc. No. 1-2, at 19.
⁶R. Doc. No. 1.
⁷R. Doc. No. 39-1, at 4.
⁸R. Doc. No. 39-1, at 5-6.
⁹R. Doc. No. 44, at 2.
¹⁰R. Doc. No. 50, at 2; *see also* R. Doc. No. 50-1, at 3.
¹¹R. Doc. No. 50-1, at 3.
¹²R. Doc. No. 62.

(E)(i) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

(ii) For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either--

(I) a judicial order, or an enforceable written agreement or consent decree; or

(II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

Pursuant to this statute, the Court follows a two-pronged approach. "The eligibility prong asks whether a plaintiff has substantially prevailed and thus may receive fees. If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Batton v. IRS*, 718 F.3d 522, 525 (5th Cir. 2013) (quoting *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011)). The Court considers each prong in turn. *See id.*

**I. Eligibility**

Plaintiff's request is premised on subsection (E)(ii)(II). This subsection, which took effect on December 31, 2007, codifies the catalyst theory of causation. *See Batton*, 718 F.3d at 525. According to plaintiff, his lawsuit was the catalyst for the voluntary or unilateral change in USCIS's position, by which it released all of the requested records only after plaintiff filed a complaint and moved for summary judgment.[13] Defendant contends that any delay in the disclosure of the relevant documents

---

[13]R. Doc. No. 46, at 1.

was a "result of delayed administrative proceedings, not a voluntary or unilateral change in the government's position."[14]

To show that plaintiff is eligible for attorney fees pursuant to the catalyst theory "requires 'showing that prosecution of the action could reasonably be regarded as necessary to obtain the information and that the action had a substantive causative effect on the delivery of the information.'" *Batton*, 718 F.3d at 525 (quoting *Lovell v. Alderete*, 630 F.2d 428, 432 (5th Cir. 1980)). "The causation requirement is missing when disclosure results not from the suit but from delayed administrative processing." *Contreras v. U.S. Dep't of Justice*, 729 F. Supp. 2d 167, 170 (D.D.C. 2010). Accordingly, "The mere fact that the information sought was not released until after the suit was instituted without more is insufficient to establish that [a plaintiff] 'substantially prevailed.'" *Lovell*, 630 F.2d at 432.

With respect to the first set of documents, which constituted plaintiff's A-file and did not include any emails, "the government did not engage in the sort of dilatory litigation tactics that [the attorney's fees] provision was aimed to prevent." *See Mobley v. Dep't of Homeland Sec.*, 908 F. Supp. 2d 42, 48 (D.D.C. 2012). Plaintiff initially submitted his FOIA request on November 20, 2012.[15] Defendant indicated on December 13, 2012, that it was processing plaintiff's request,[16] and plaintiff filed suit on January 4, 2013.[17] "[T]he government's compliance with [plaintiff's] request so early in the litigation is not the sort of agency behavior that Congress intended to prevent by awarding attorney's fees." *Id.* at 48; *see also Arevalo-Franco v. INS*, 772 F. Supp. 2d 959, 961 (W.D.

---

[14] R. Doc. No. 72, at 3.
[15] R. Doc. No. 39-1, at 3.
[16] R. Doc. No. 50-1, at 2.
[17] R. Doc. No. 1.

Tex. 1991) ("FOIA was not meant to reward plaintiffs who[,] impatient with justifiable delays at the administrative level, resort to the squeaky wheel technique of prematurely filing suit in an effort to secure preferential treatment.") (quotation omitted). Morever, the Court notes that plaintiff's complaint was filed very quickly after his initial FOIA request, weakening any inference that the filing of the complaint was the catalyst for the agency's disclosure. *Cf. Batton*, 718 F.3d at 526 ("Indeed, Batton filed his FOIA suit after enduring the IRS's continued and unexplained delays in responding to his request for almost one year."); *Sikes v. United States*, No. 312-045, 2013 WL 6633082, at *13 (S.D. Ga. Dec. 6, 2013) ("[T]he extensive correspondence between Plaintiff and Defendants' representatives demonstrates that the instant case is not one of a plaintiff prematurely resorting to litigation to attain the requested materials."). Accordingly, the Court finds that plaintiff is not eligible for attorney's fees relative to the disclosure of the first set of documents.

With respect to the second set of documents, by which the Court refers to the emails disclosed in May 2012, plaintiff has demonstrated eligibility for attorney's fees. Plaintiff requested "copies of all written or electronic correspondence or communication, including, but not limited to, any email correspondence."[18] The sentence requesting these materials was the only underlined portion of plaintiff's request.[19] On May 7, 2013, in his opposition to defendant's motion for summary judgment, plaintiff highlighted the fact that no emails had been disclosed and that the declarations submitted by defendant did not reflect that emails were ever searched.[20] Later the same day, counsel for defendant filed a motion to continue the submission date of the cross-motions for summary judgment,

---

[18]R. Doc. No. 41-2, at 3.
[19]R. Doc. No. 41-2, at 3.
[20]R. Doc. No. 43-1, at 3-4.

asserting that counsel "was recently advised by USCIS that additional documents have been located that are responsive to Plaintiff's FOIA request."[21]

According to a declaration by Brian J. Welsh, Deputy Chief of the FOIA Program Branch, National Records Center, USCIS, the email searches occurred on April 10, 2013, May 17, 2013, and May 20, 2013.[22] Notwithstanding the fact that these searches were, apparently, ongoing, defendant nonetheless moved for summary judgment on May 1, 2013, neglecting to mention the ongoing searches until the issue was raised in plaintiff's May 7 filing. Moreover, defendant has not explained why it "initiated a second, third, and fourth search for documents [] after it had [ostensibly] completed processing and production of all records." *Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*, 810 F. Supp. 2d 267, 275-76 (D.D.C. 2011). The only explanation for the delay is that the initial request was somehow "missed," and there is no suggestion that anything other than plaintiff's lawsuit caused the missed request to be revisited.[23] Accordingly, the Court infers that the requisite causal nexus exists between plaintiff's lawsuit and defendant's search for and disclosure of the emails.

In conclusion, the first set of documents was disclosed to plaintiff within a matter of weeks, and defendant indicated that the search for these documents was underway before plaintiff filed his complaint. Accordingly, plaintiff is not eligible for attorney's fees with respect to these documents.

---

[21]R. Doc. No. 44, at 2.
[22]R. Doc. No. 50-1, at 3.
[23]The Court disagrees with plaintiff's suggestion that the Court order requiring defendant to produce these documents was the cause of such production. *See, e.g.*, R. Doc. No. 70-2, at 17. Defendant took the initiative in notifying the Court and plaintiff that these documents existed, and, simultaneously, defendant indicated that the documents would be produced. R. Doc. No. 44, at 2 ("Defendants move to continue the pending motions . . . so that the remaining documents can be produced and ruled upon.").

With respect to the second set of documents, plaintiff is eligible to receive attorney's fees because this set was disclosed after approximately five months and, more importantly, after defendant submitted a declaration, sworn under penalty of perjury, to the effect that all documents had already been disclosed[24] and defendant then reconsidered its position after plaintiff moved for summary judgment. Accordingly, the Court turns to whether plaintiff is entitled to such fees relative to the second set of documents.

## II. Entitlement

"District courts must consider four factors in the entitlement analysis: (1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law." *Batton*, 718 F.3d at 527 (quotation omitted). "Additionally, the court may consider any relevant equitable factors that may affect its balancing of the criteria above." *Lovell*, 630 F.2d at 432. The Court should assess these factors "against the backdrop of the treble policies of the FOIA attorneys'-fees provision in (1) incentivizing private litigants to pursue their claims by providing a means of overcoming barriers that government may erect in an effort to escape compliance with the law; (2) deterring the government from opposing justifiable requests; and (3) punishing the government where such opposition is unreasonable." *Batton*, 718 F.3d at 527. (quotation and modification omitted).

### A. Purpose of Request

---

[24]*See* R. Doc. No. 41-2, at 4 ("Based on a review of the located records, USCIS/NRC personnel determined that the search was reasonably designed to locate any responsive documents . . . .").

"Essentially, the first three factors assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage. The former engage in the kind of endeavor for which a public subsidy makes some sense, and they typically need the fee incentive to pursue litigation; the latter cannot deserve a subsidy as they benefit only themselves and typically need no incentive to litigate." *Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008).

### 1. Public Benefit

"The first factor assesses the public benefit derived from the case, and requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought." *Davy*, 550 F.3d at 1159 (citation and quotation omitted). "[T]he factor of 'public benefit does not particularly favor attorneys' fees where the award would merely subsidize a matter of private concern; this factor rather speaks for an award where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Blue v. Bureau of Prisons*, 570 F.2d 529, 533-34 (5th Cir. 1978).

Here, the effect of the litigation was the release of over one thousand pages of emails. The potential public value of the information sought, however, is minimal. To the extent that plaintiff argues that an award of attorney's fees will deter future deter agency misconduct,[25] the Court addresses this argument below.

### 2. Commercial Benefit to Complainant

The parties essentially agree that there was no commercial benefit to plaintiff.[26]

---

[25]R. Doc. No. 70-2, at 16.
[26]R. Doc. No. 70-2, at 17; R. Doc. No. 72, at 5 (failing to identify a commercial benefit and arguing that "regardless if Plaintiff did not have any commercial interest in the material sought, his personal

### 3. Nature of Complainant's Interest

Several articulations of plaintiff's interest in the emails have been proposed, and the Court considers each in turn.

### a. Discovery

Much of plaintiff's alleged interest relates to the need to use his A-file during removal proceedings. For example, plaintiff's request, by its very terms, was "in connection with removal proceedings, which are currently taking place before the Immigration Court in New Orleans, Louisiana."[27] In his complaint, plaintiff acknowledges that the purpose of requesting his A-file was "for the purpose of obtaining proof of his status as a Lawful Permanent Resident so that he could accord himself due process and properly defend himself in his recent removal proceedings."[28] According to the complaint, when plaintiff requested a copy of his A-file from U.S. Immigration and Customs Enforcement ("ICE"), only a "small handpicked portion" was produced, and he was directed to file a FOIA request to the extent that he wanted additional documents from the file.[29]

Insofar as plaintiff's discovery-related justifications relate to the emails disclosed by defendant, these justifications do not weigh in favor of an award of attorney's fees.[30] It is "settled law that FOIA was not intended to be a substitute for discovery." *Cooper Cameron Corp. v. U.S. Dep't of Labor, Occupational Safety & Health Admin.*, 280 F.3d 539, 548 & n.39 (5th Cir. 2002); *see also Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1027 (7th Cir. 2012) ("FOIA is not a substitute for

---

interest in the material is so great it outweighs an award of attorney's fees").
[27]R. Doc. No. 1-2, at 7.
[28]R. Doc. No. 1, at 1.
[29]R. Doc. No. 1, at 6; *see also* R. Doc. No. 1-2, at 4.
[30]To the extent that discovery-related justifications apply to the A-file, these justifications remain unavailing, but the Court has already found plaintiff ineligible for attorney's fees as to these materials.

discovery."). Accordingly, plaintiff's use of FOIA "as a substitute for discovery constitutes a private, noncompensable personal interest." *Ellis v. United States*, 941 F. Supp. 1068, 1079 (D. Utah 1996).

### b. Alleged Agency Misconduct

In addition to discovery, plaintiff has provided additional articulations of his interest in the emails. In his motion for summary judgment, plaintiff explained the reason that he sought the email correspondence as follows:

> Although FOIA does not require the requester to explain a reason for a FOIA request, it is important to notify this Honorable Court that the reason why Plaintiff wants to review the specified Defendants' Emails is because, for several years, [three] USCIS employees refused to adjudicate Plaintiff's properly filed petition for lawful permanent residence ("Form I-485"), . . . [and] unlawfully closed Plaintiff's case without adjudicating the Form I-485, while confiscating Plaintiff's $1,070.00 application fee. . . . Undersigned counsel currently has two other clients with factually similar cases, whose $1,070.00 filing fees have also been confiscated and their cases closed without adjudication . . . by the aforementioned USCIS Adjudications Officer Mary Patin. It is important to find out if USCIS Adjudications Officer Mary Patin is simply one rogue USCIS employee who is refusing to follow the law for a yet undetermined reason; or if this is part of a pattern and practice at the USCIS New Orleans Field Office, which could involve hundreds of immigrants and hundreds of thousands of dollars in unlawfully confiscated fees.[31]

In his current motion for attorney's fees, he explains that the purpose of the request was to permit plaintiff and his attorney: (1) to determine the individual "who directed ICE attorney Joe LaRocca to refuse . . . to give Mr. DaSilva a copy of his A-File"; (2) to determine who "directed Officer Mary Patin to refuse to adjudicate" plaintiff's Form I-485; and (3) to determine who "directed Officer Mary Patin . . . to place Mr. DaSilva into removal proceedings."[32]

---

[31]R. Doc. No. 39-2, at 15-16.
[32]R. Doc. No. 70-2, at 3.

The Court interprets these statements to suggest two alternative justifications: identifying the individual allegedly responsible for misconduct relative to plaintiff's removal proceedings and identifying a pattern or practice of agency misconduct.

With respect to the argument that the disclosure of the emails would assist plaintiff in identifying an individual who allegedly directed USCIS employees to take certain actions relative to plaintiff's removal proceedings, there is no ascertainable public interest at stake. With respect to the pattern or practice argument, this is not a case where a plaintiff "obtained relief 'not just for himself, but also for other litigants and attorneys.'" *See Hajro v. USCIS*, 900 F. Supp. 2d 1034, 1048 (N.D. Cal. 2012) (quotation omitted). While plaintiff may characterize an "overarching goal" of modifying defendant's policies, there is no indication of how plaintiff's request relative to his "personal dispute with [defendant] provides a public benefit." *Id.* at 1047.

### c. Increasing A-File Accessibility

Plaintiff also characterizes his interest in part as "gathering and disseminating information of interest to other members of the American Immigration Lawyers Association in order to increase the public fund of knowledge about a matter of public concern, namely the govenrment['s] continued refusal to follow The Mandatory Access Law [or] to allow people in removal proceedings to obtain a copy of their A-File without going through the formal FOIA process . . . ."[33] However, as previously noted, plaintiff is not eligible for attorney's fees relative to the disclosure of his A-file.

### d. Conclusion

---

[33]R. Doc. No. 70-2, at 18.

"[T]he successful FOIA plaintiff always acts in some degree for the benefit of the public, both by bringing government into compliance with the FOIA disclosure policy and by securing for the public at large the benefits assumed to flow from the public disclosure of government information." *Blue*, 570 F.2d at 533 (quotation omitted). Here, however, the award of attorney's fees "would merely subsidize a matter of private concern." *Id.* at 533-34. Accordingly, while plaintiff's interest is not commercial, which weighs in favor of an award of attorney's fees, the personal nature of that interest and the lack of a public benefit weigh against an award of attorney's fees.

The Court concludes that plaintiff's self interest is sufficient motivation for the pursuit of his lawsuit. "The court should not ordinarily award fees under this situation *unless* the government officials have been recalcitrant in their opposition to a valid claim or have been otherwise engaged in obdurate behavior." *Cazalas v. U.S. Dep't of Justice*, 709 F.2d 1051, 1054 (5th Cir. 1983) (quoting Senate Report No. 93-854 at 19). In determining whether defendant has been recalcitrant or obdurate, the Court proceeds to the fourth factor—the basis in law for the government's withholdings.

**B. Basis in Law**

The burden is on the government to demonstrate that its withholding of responsive documents had a reasonable basis in law. *See Davy*, 550 F.3d at 1162-63; *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 820 F. Supp. 2d 39, 47 (D.D.C. 2011) ("Significantly, the burden remains with the agency: The question is not whether Plaintiff has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after Plaintiff filed suit.") (quotation omitted). Defendant relies on two arguments: first, that plaintiff's request was ultimately processed within the

typical time frame for similar requests and, second, that the Court has ultimately found the withholdings and redactions justified.[34]

Relative to the emails, defendant argues that "non-A-file material" processing can take "up to 109 business days."[35] Therefore, defendant acted "reasonably," and "in the same manner it handles a typical FOIA request."[36] The Court finds this argument unpersuasive because Defendant submitted sworn declarations that disclosure was complete when searches were still ongoing. As previously noted, there is no indication that, were it not for the pending litigation, Defendant would have revisited the request for emails.

With respect to the argument that defendant's eventual disclosures and withholdings were justified, it is insufficient to argue merely that the government was justified in its ultimate withholdings, notwithstanding the delay associated with the disclosures. Rather, "[s]ince plaintiff['s] challenge is to the government's delay in releasing the records rather than its substantive claims of exemption, the reasonableness factor does not favor a fee award so long as the government did not engage in obdurate behavior or bad faith." *Ellis*, 941 F. Supp. at 1080. If defendant did engage in obdurate or recalcitrant behavior or bad faith, such conduct may "merit[] an award that serves a punitive purpose, almost regardless of the necessity of such an award to encourage an FOIA complainant to pursue his or her rights." *Cazalas*, 70 F.2d at 1054.[37]

Neither party has identified a case where the government initially overlooks a portion of a request and then revisits the request in light of ongoing litigation. The U.S. District Court for the

---

[34] R. Doc. No. 72, at 6.
[35] R. Doc. No. 72, at 7.
[36] R. Doc. No. 72, at 7.
[37] Attorney's fees may also be appropriate if "an agency's nondisclosure was designed to avoid embarrassment or thwart the requester." *Blue*, 570 F.2d at 534.

-13-

District of Columbia, however, has characterized a "persistent and inexplicable refusal to search" the proper database, "despite misleading representations otherwise," as "a distressing active disregard" of FOIA obligations. *Negley v. FBI*, 658 F. Supp. 2d 50, 58 (D.D.C. 2009). That Court has also persuasively found that a defendant " did not have a reasonable basis for withholding . . . records that were produced after the defendants had [allegedly] 'completed processing and production of all records.'" *Am. Civil Liberties Union*, 810 F. Supp. 2d at 277.

In the instant matter, defendant's filings, including its motion for summary judgment and accompanying evidence, suggested that defendant only searched the A-file for responsive documents because "all immigration transactions and *communications* involving a particular individual are documented and stored [in his A-file] as he passes through the immigration and inspection process."[38] The attached declaration by Jill A. Eggleston, Assistant Center Director in the FOIA and Privacy Act Unit of USCIS, repeated plaintiff's request for "<u>all written or electronic correspondence or communication, including, but not limited to, any email correspondence.</u>"[39]

Defendant's initial withholding of the emails did not have "even a colorable basis in law"—it was the result of an oversight. *See Cazalas*, 709 F.2d at 1055. The Court need not determine whether a mere oversight, however significant, is the type of "obdurate" conduct warranting attorney's fees. Defendant's sworn declarations and pleadings, which reiterated that plaintiff sought email communications, and then asserted that "all communications" would be in his A-file, are plainly misleading. *See Am. Civil Liberties Union*, 810 F. Supp. 2d at 275-76; *Negley*, 658 F. Supp. 2d at 58. "[W]hether blunder or subterfuge, [this] 'is the kind of recalcitrant and obdurate conduct'" that merits

---

[38]R. Doc. No. 41-1, at 7 (emphasis added).
[39]R. Doc. No. 41-2, at 3.

attorney's fees. *See Nat'l Sec. Archive v. U.S. Dep't of Def.*, 530 F. Supp. 2d 198, 209 (D.D.C. 2008) (quoting *Piper v. U.S. Dep't of Justice*, 339 F. Supp. 2d 13, 23 (D.D.C. 2004)).

**III. Hourly Rate**

Once a district court concludes that a party is entitled to attorney's fees, it utilizes the lodestar method to determine the amount to be awarded. *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997). Under this method, a district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys, and then multiply the two figures together to arrive at the "lodestar." *Id.* (citing *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995); *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996)). The lodestar is then adjusted upward or downward, depending on the circumstances of the case, after assessing the dozen factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974); *see also Blue*, 570 F.2d at 531.

Even if plaintiff's counsel had focused his time sheet solely on the two FOIA requests at issue, the Court would be unable to ascertain the percentage of plaintiff's hours associated with the second set of documents disclosed by FOIA, for which additional briefing will be required. *See Nat'l Sec. Archive*, 530 F. Supp. 2d at 209 ("[Defendant's] inability to segregate the time spent on the claim it won from the time spent on the claim it lost militates against the award of fees it seeks."). The Court pauses, however, to address troubling aspects of the existing time sheet. *See Piper*, 339 F. Supp. 2d at 24. For example, plaintiff requests compensation for four hours associated with counsel's "[t]ravel to U.S. Attorney's office/Conference with Defense counsel to pick up I-551 (green card) / Return to office from U.S. Attorney's office" and for counsel's round trip travel to plaintiff's house

"to hand deliver" plaintiff's green card and personally confer with plaintiff.[40] These activities appear wholly unrelated to either of plaintiff's FOIA claims, much less his successful one.[41] *Id.* ("Nor should fees be granted for hours spent on unsuccessful claims that are distinct in all respects from successful claims."). The Court anticipates that such items will be justified by (or omitted from) plaintiff's revised time sheet. The Court proceeds to consider the proper hourly rate at which fees will be assessed.

Plaintiff's counsel seeks fees in the amount of $295.00 per hour,[42] which he contends is a "reasonable market rate for an attorney with [his] background and experience."[43] Defendant argues that this rate is excessive for an attorney with six to seven years of experience practicing in the Eastern District of Louisiana[44] and that his hourly rate should be capped at approximately $175.00 per hour.[45]

"'[R]easonable' hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'" *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "[T]he burden is on the applicant to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* (quoting *Blum*,

---

[40]R. Doc. No. 70-3, at 3.
[41]The Court has denied plaintiff's motion for attorney's fees relative to his pursuit of a replacement green card. R. Doc. No. 81; *see also, e.g.*, R. Doc. No. 70-3, at 6 (claiming 6.40 hours of attorney's fees for work on a supplemental memorandum challenging the basis for defendant's redactions); R. Doc. No. 62; R. Doc. No. 68 (granting USCIS's motion for summary judgment relative to the redactions).
[42]R. Doc. No. 70-4, at 2.
[43]R. Doc. No. 70-5, at 2; *see also* R. Doc. No. 70-8, at 2. He represented plaintiff in this matter pro bono. R. Doc. No. 70-5, at 2; R. Doc. No. 70-8.
[44]R. Doc. No. 72, at 7.
[45]R. Doc. No. 72, at 9.

465 U.S. at 896 n.11). "Satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits. However, mere testimony that a given fee is reasonable is not satisfactory evidence of a market rate." *Cole v. Orleans Parish Sheriff's Office*, No. 11-2211, 2013 WL 5557416, at *2 (E.D. La. Oct. 8, 2013) (Roby, Mag. J.) (citations omitted).

Plaintiff's counsel graduated from the Barry University Dwayne O. Andreas School of Law in 2006.[46] From November 2007 to the present, counsel has "been the owner of The Immigration Law Firm of New Orleans, specializing in the area of immigration law," which his exclusive area of practice,[47] and he has represented "hundreds of clients" in this area.[48] Accordingly, counsel has approximately seven years of experience in immigration law, but counsel has not indicated how that experience related to plaintiff's FOIA claim. Similarly, counsel has not provided any evidence or argument as to his experience with FOIA.

"When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed." *La. Power & Light Co.*, 50 F.3d at 32. Plaintiff's counsel has submitted a declaration to the effect that $295.00 hourly is his customary billing rate.[49] But this does not demonstrate that $295.00 is the rate "actually billed and paid in

---

[46]R. Doc. No. 70-5, at 2.
[47]R. Doc. No. 70-5, at 2. Based on the firm's website, it appears that he is the firm's only attorney. THE IMMIGRATION LAW FIRM, http://www.immigrationlawneworleans.com (last visited February 20, 2014).
[48]R. Doc. No. 70-5, at 2.
[49]R. Doc. No. 70-5, at 2.

-17-

*similar lawsuits*," *Blum*, 465 U.S. at 896 n. 11 (emphasis added), given that counsel's primary practice appears to be immigration law, rather than FOIA.[50]

Plaintiff also has attached a Laffey Matrix, prepared by the Civil Division of the U.S. Attorney's Office for the District of Columbia, and highlighted that an attorney with 4-7 years corresponds to an hourly rate of $290.00 in the matrix.[51] The Court finds the Laffey Matrix unpersuasive, in part because there is no evidence that rates in the District of Columbia are comparable to rates in the Eastern District of Louisiana. *See also In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 819 (S.D. Tex. 2008) (Harmon, J.) ("[T]his Court agrees that not only is there no case in the Fifth Circuit that has applied the Laffey Matrix to determine reasonable fees, but the Fifth Circuit has clearly endorsed an alternative approach, the twelve-factor *Johnson* test, for that purpose.").

Plaintiff's counsel has failed to advise the Court of his experience relative to FOIA requests, as opposed to immigration law. After reviewing recent caselaw from the Eastern District of Louisiana, however, the Court concludes that an hourly rate of $200.00 is appropriate given counsel's seven years of experience in immigration law and the absence of any evidence specifying his experience in representing clients with FOIA claims. *See, e.g.*, *Marks v. Standard Fire Ins. Co.*, No. 09-1947, 2010 WL 487403 (E.D. La. Feb. 3, 2010) (awarding $185.00 hourly to an attorney with seven years of experience).

Finally, the Court notes that plaintiff seeks $793.94 in costs,[52] and defendant has not set forth any opposition to this request.

---

[50]Of note,
[51]R. Doc. No. 70-7, at 2 & n.1; *see also* R. Doc. No. 70-2, at 9.
[52]R. Doc. No. 70-2, at 20.

-18-

## CONCLUSION

For the foregoing reasons, the Court concludes that plaintiff is eligible and entitled to recover attorney's fees for the aspects of his lawsuit that related to the disclosure of the second set of documents. While the lack of a public benefit from this litigation and the personal nature of plaintiff's interest weigh heavily against an award of such fees, defendant's misleading conduct in the pending litigation merits an award of fees that will serve to deter future conduct. The Court notes, however, that a reduction may be appropriate given "plaintiff's manifest private interest in this case," *Piper*, 339 F. Supp. 2d at 25.

**IT IS ORDERED** that the motion is **GRANTED IN PART**. Plaintiff is eligible and entitled to recover attorney's fees for the aspects of his lawsuit that relate to the disclosure of the second set of documents.

**IT IS FURTHER ORDERED** that the motion is **GRANTED IN PART** without opposition and that plaintiff is entitled to an award of $793.94 in costs.

**IT IS FURTHER ORDERED** that the motion is **DENIED IN PART**. Plaintiff is neither eligible nor entitled to recover attorney's fees for the aspects of his lawsuit that relate to the disclosure of the first set of documents.

**IT IS FURTHER ORDERED** that the motion is **DISMISSED WITHOUT PREJUDICE** in all other respects.

**IT IS FURTHER ORDERED** that on or before **March 10, 2014**, plaintiff shall file a separate motion, including a revised time sheet consistent with the directives herein, addressing the proper amount of attorney's fees relative solely to the disclosure of the second set of documents.

New Orleans, Louisiana, February 24, 2014.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**